**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

J.E., a MINOR CHILD,
by her Mother and next friend,
JUANITA EVANS,

Plaintiff,

v.

THE BOARD OF EDUCATION OF
THE CITY OF CHICAGO,

Defendant.

Case No. 23-CV-02274

Judge John Robert Blakey

**MEMORANDUM ORDER AND OPINION**

Plaintiffs J.E., a minor child, and her mother, Juanita Evans, sue the Board of Education of the City of Chicago (the "Board") for violation of the Americans with Disabilities Act ("ADA") (Count I) and for willful and wanton conduct under Illinois state law (Count II). [17]. The Board moves to dismiss Counts I and II, arguing that both of Plaintiffs' claims fail as a matter of law. [18]. For the reasons explained below, the Court grants the Board's motion.

## I. Factual Background[1]

At the time Plaintiffs filed suit, J.E. was a five-year-old student with a developmental delay disability who resided in Chicago, Illinois. [17] ¶¶ 11–12. In August of 2021, J.E. began attending half-days at the Building Blocks Learning Academy in Chicago. *Id.* ¶¶ 24–25. Several months later, on November 12, 2021,

[1] The Court draws the facts from Plaintiff's First Amended Complaint, [17], accepted as true for purposes of Defendant's motion to dismiss.

Building Blocks Day Care, a therapeutic day school, evaluated J.E. for a "Head Start" screening. *Id.* ¶ 26. During this evaluation, evaluators expressed concerns about J.E.'s cognitive, academic, motor, and communication skills, as well as her social emotional functioning. *Id.* As a result, Building Blocks Day Care referred J.E. for a full evaluation regarding an Individual Education Program ("IEP"). *Id.*

On March 21, 2021, J.E. received a Chicago Public Schools ("CPS") initial IEP evaluation. *Id.* ¶ 27. During the evaluation, J.E. exhibited weak vocabulary skills, her speech was not always clear, and she struggled with fine motor skills, including grasping. *Id.* ¶ 28. After considering J.E.'s developmental disability along with her individual academic, developmental, and functional needs, her IEP evaluation team determined that she required "one on one support on a daily basis." *Id.* ¶ 29. Within the developmental and functional needs portion of the IEP, the team stated that J.E. was able to access the school environment and "play on a playground given general supervision." *Id.* ¶ 30.

The IEP evaluation ultimately determined that J.E. required modifications or accommodations for specialized instruction relating to independent functioning and educational areas. [17] ¶ 31. Further, the IEP evaluation concluded that the optimal educational setting for J.E. would be general education paired with special education support for over 60% of the school day. *Id.* ¶ 32. This special education support would be administered outside of the general education setting, yet within a general education school. *Id.*

The Board maintains administrative control and direction of public elementary schools in the City of Chicago. *Id.* ¶ 17. To effectively provide J.E. with the full benefits of a CPS special education program, the Board was responsible for assigning J.E. to a CPS school that would meet the reasonable modifications and accommodations set forth in her IEP. *Id.* ¶ 35. The Board eventually assigned J.E. to attend Stagg Elementary School, a CPS school. *Id.* ¶ 32. The implementation of J.E.'s individual IEP program was scheduled to take place at Stagg from March 21, 2022 through March 21, 2023. *Id.* ¶ 34.

On April 28, 2022, J.E. began attending Stagg and participating in an individualized CPS special education program during half of the school days, pursuant to her IEP. [17] ¶ 37. Plaintiffs allege that on May 31, 2022, J.E. played on the playground unsupervised at Stagg. *Id.* ¶¶ 39, 42. While on the playground, J.E. attempted to step onto the playground set and fell on a step that exceeded her reach. *Id.* ¶ 39. As a result of this fall, J.E. suffered a fracture in her right arm. *Id.*

Following J.E.'s fall on the playground, Mrs. A., J.E.'s special education teacher at Stagg, contacted J.E.'s mother, Juanita Evans, via text message. [17] ¶ 40. In a text message sent at 2:24 p.m. on the day of the incident, Mrs. A. informed Ms. Evans that J.E. was ready to be picked up from school because she had been crying for about 20 minutes. [17-2] at 1. In a subsequent text message sent to Ms. Evans, Mrs. A. explained that J.E., "went outside to play on the playground and she couldn't get on one of the playground sets because it was too high and she was upset and hasn't stopped crying since." *Id.* Mrs. A. further informed Ms. Evans that there

were 6 teachers outside at the time of the incident, and none of them saw J.E. fall on the playground. *Id.* at 3.

Plaintiffs assert that, because no teacher knew what happened to J.E., the Board provided no supervision to the disabled minor J.E. while she was playing on a dangerous playground. [17] ¶ 46. Thus, Plaintiffs contend that, by allowing J.E. to play on the playground unsupervised on the day of the incident, the Board, individually and by and through its agents and/or employees, the teachers, failed to administer the reasonable accommodations legally required by the IEP. *Id.* ¶ 1.

Following the incident, on May 31, 2022, J.E. did not return to her assigned public school, Stagg. [17] ¶ 48. As a result of J.E.'s injury, Plaintiffs incurred medical and hospital expenses. *Id.* ¶ 71. Today, J.E. continues to suffer mental and emotional anguish as a result of her fall on the playground. *Id.* ¶ 71. Plaintiffs contend that, absent the enforcement of the accommodations outlined in J.E.'s IEP, J.E. cannot attend an assigned CPS public school and cannot meaningfully benefit from the special education program the Board has offered.[2] *Id.* ¶ 1.

Plaintiffs filed their initial complaint on April 11, 2023, [1], and their first amended complaint on July 20, 2023, [17]. The Board now moves to dismiss Counts I and II of Plaintiffs' first amended complaint, arguing that both fail as a matter of law. [18].

[2] In their first amended complaint, Plaintiffs sought "compensatory damages, declaratory relief and injunctive relief." [17] ¶ 2. Plaintiffs, however, have since withdrawn their request for all relief other than compensatory damages, stating in their response to the Board's motion to dismiss, "Plaintiffs are only seeking compensatory damages, a remedy that the IDEA cannot supply." [21] at 6. As such, this Court is no longer being asked to consider injunctive relief or J.E.'s future educational placement or other IDEA accommodations as required by law.

## II. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is "plausible on its face" and "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570. Importantly, a motion to dismiss tests the sufficiency of the complaint, not the merits of the case. *See Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). To pass this test, the claim must be described "in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests." *E.E.O.C. v. Concentra Health Servs.,* Inc., 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

When deciding a motion to dismiss, the Court must accept as true all well-pled factual allegations, but it need not accept mere legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 679 (2009). Thus, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a Rule 12(b)(6) motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). But when considering well-pled factual allegations, a court must draw all reasonable inferences from those allegations in favor of the plaintiff. *Thompson v. Illinois Dep't of Professional Regulation*, 300 F.3d 750, 753 (7th Cir. 2002).

## III. Analysis

### A. Violation of Americans with Disabilities Act

#### 1. Failure to Exhaust Administrative Remedies under the IDEA

The Board moves to dismiss Count I, Plaintiffs' ADA claim, arguing that Plaintiffs must first exhaust the administrative remedies available to them under the Individuals with Disabilities Education Act ("IDEA") before pursuing a claim under another federal law. [18] at 3. Plaintiffs argue that they are not required to exhaust their remedies under the IDEA because the remedy sought by Plaintiffs (compensatory damages) is not relief that is provided under the IDEA. [21] at 2.

The relevant IDEA exhaustion provision is codified in 20 U.S.C. § 1415(l), which states:

> Nothing in [the IDEA] shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the [ADA], title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such [other federal] laws seeking relief that is also available under [the IDEA], the [IDEA's administrative procedures] shall be exhausted to the same extent as would be required had the action been brought under [the IDEA]."

20 U.S.C. § 1415(l). Thus, a plaintiff must first exhaust the IDEA's administrative procedures only when the suit is "seeking relief that is also available under" the IDEA. *Id.*

The parties agree that Plaintiffs seek only compensatory damages for denial of a free and appropriate education and that, were they seeking relief available under the IDEA, they would first have to exhaust administrative remedies. Thus, the question turns on whether a plaintiff can bring a claim under the ADA without first

exhausting administrative remedies under the IDEA simply because she seeks compensatory damages, a form of relief not available under the IDEA. The Supreme Court answered this exact question in *Luna Perez v. Sturgis Public Schools*, 598 U.S. 142, 145 (2023).

The plaintiff in *Perez* brought suit under the ADA for "backward-looking relief in the form of compensatory damages." 598 U.S. at 145. The defendant moved to dismiss on the grounds that the plaintiff failed to exhaust her remedies under the IDEA. The Court held that the administrative exhaustion requirement does not apply "where a plaintiff brings a suit under another federal law for compensatory damages—a form of relief everyone agrees the IDEA does not provide." *Id.* at 147−48. So too here. Plaintiffs seek compensatory damages for events that have already occurred, namely J.E.'s physical injury on the playground. Under *Perez*, Plaintiffs need not exhaust their administrative remedies before bringing such claim.

Accordingly, the Court denies the Board's motion to dismiss Count I of Plaintiffs' complaint for failure to exhaust administrative remedies under the IDEA.

**2. Failure to State a Claim under the ADA**

The Board also moves to dismiss Count I of Plaintiffs' complaint for failure to state a claim under the ADA. [18] at 9.

To adequately state a claim under Title II of the ADA, a plaintiff must "plead facts suggesting that he is a 'qualified individual with a disability' who 'by reason of such disability' was 'denied the benefits of the services, programs, or activities of a public entity.'" *Brown v. Meisner*, 81 F.4th 706, 708 (7th Cir. 2023) (quoting 42 U.S.C.

§ 12132). A Title II ADA claim can be based upon one of three theories: "(1) the defendant intentionally acted on the basis of the disability, (2) the defendant refused to provide a reasonable modification, or (3) the defendant's rule disproportionally impacts disabled people." *Wis. Cmty. Servs. V. City of Milwaukee*, 465 F.3d 737, 753 (7th Cir. 2006). To state a reasonable accommodation claim under Title II of the ADA, "a plaintiff need not allege either disparate treatment or disparate impact." *Id.*

Here, Plaintiffs allege that the Board failed to make reasonable accommodations for J.E by failing to enforce her IEP, which constitutes a denial of the benefits of the special education program.[3] [17] ¶¶ 1, 50, 62, 63, 65, 69, 70. Plaintiffs rely upon Section 7 of the IEP, which is entitled "General Considerations in the Development of the IEP" and which states that J.E. was "able to play" on a playground "given general supervision." *Id.* ¶ 30; *see also* [17-1] at 3. But nothing in J.E.'s IEP indicates that providing "general supervision" on the playground constituted an accommodation or modification for J.E.'s disability.

On the contrary, her IEP lists various areas of need for which J.E. requires an accommodation and/or modification. [17-1] at 6. Notably, the areas of physical education, physical/sensory, health/medical, non-academic, and extra-curricular activities are *not* checked off as areas in which J.E. needs an accommodation or modification. *Id.* The IEP only refers to a need for "general supervision" on the

[3] Any state covered by the IDEA, such as Illinois, must provide a disabled child with special education and related services "in conformity with the [child's IEP]" as part of the requisite free and appropriate public education (FAPE). *Endrew F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386, 390 (2017) (quoting 20 USCS § 1401(9)(D)). The IEP has been referred to as "the centerpiece of the [IDEA's] education delivery system for disabled children." *Id.* at 391. A child's IEP "is the means by which special education and related services are 'tailored to the unique needs' of a particular child." *Id.*

playground in Section 7, which describes in a narrative fashion what activities J.E. is capable of performing. *Id.* It does not describe the needed modifications or accommodations J.E. requires.

Further, while failure to abide by a student's IEP can form the basis for a reasonable accommodation claim, *see McDaniel v. Bd. Of Educ. Of City of Chicago*, 2013 WL 3872807, at *6 (N.D. Ill. July 25, 2013), not every deviation from an IEP constitutes discrimination under the ADA subject to a claim for compensatory damages. *See CTL ex rel. Trebatoski v. Ashland Sch. Dist.*, 743 F.3d 524, 529 (7th Cir. 2014). Rather, the ADA requires a modification only "when *necessary* to avoid discrimination *on the basis* of a disability." *Id.* (quoting *Wis. Cmty. Servs.,* 465 F.3d at 753). In such instances, a school may be required to modify its "policies, practices, or procedures" to avoid discrimination. *Fry v. Napoleon Cmty. Sch.*, 580 U.S. 154, 159 (2017).

But Plaintiffs fail to identify any reasonable *modification* that the Board refused to make. Indeed, Plaintiffs fail to even allege that J.E. required a modification or accommodation to play on the playground. At most, Plaintiffs appear to be arguing that failure to provide J.E. the same supervision a non-disabled child would receive constituted a violation of her IEP and, therefore, the ADA. Even assuming such a failure were a violation of J.E.'s IEP, it would not constitute denial of a reasonable accommodation or modification, and thus it cannot support Plaintiffs' ADA claim. Absent any other factual allegations that demonstrate the Board denied

J.E. a reasonable accommodation, Plaintiffs have failed to state a claim for violation of the ADA.[4]

Accordingly, the Court grants the Board's motion to dismiss Count I.

### B. Count II: Willful and Wanton Conduct

Plaintiffs also bring a claim of willful and wanton conduct, alleging that the Board failed to provide any supervision to disabled minor J.E., as required by the IEP guidelines, despite the inherent dangerous nature of the playground**.** [21] at 9. The Board argues that Plaintiffs have not pled any facts to support a finding of willful and wanton conduct. [18] at 12

Under Illinois law, there exists no separate and independent tort for willful and wanton conduct. *Krywin v. Chi. Transit Auth.*, 938 N.E.2d 440, 452 (Ill. 2010). Rather, willful and wanton conduct constitutes an aggravated form of negligence. *Id.* Thus, to state a claim for willful and wanton conduct, a plaintiff must allege the basic elements of a negligence claim, as well as "either a deliberate intention to harm or an utter indifference to or conscious disregard for the welfare of the plaintiff." *Doe v. Chi. Bd. Of Educ.*, 820 N.E.2d 418, 423 (Ill. 2004).

[4] The Seventh Circuit has also held that Title II of the ADA "only provides for damages if a public official *intentionally* discriminates because of disability." *Morris v. Kingston*, 368 F. App'x 686, 689 (7th Cir. 2010) (citing *Bd. of Educ. of Twp. High Sch. Dist. No. 211 v. Ross*, 486 F.3d 267, 278 (7th Cir. 2008)); *see also Hildreth v. Butler*, 960 F.3d 420, 431 (7th Cir. 2020) (holding a plaintiff must allege deliberate indifference to state a claim for compensatory damages under the ADA). Because Plaintiffs concede that, by not exhausting their administrative remedies, they can *only* seek compensatory damages under the ADA, they must also allege intentional discrimination by a public official to succeed on their Title II theory. As discussed below, Plaintiffs fail to allege that any public official intentionally discriminated against J.E. or acted with deliberate indifference. Thus, Count I fails for the independent reason that Plaintiffs have failed to properly state a claim for the only relief available to them under the ADA.

Willful and wanton conduct goes beyond "mere inadvertence, incompetence, unskillfulness, or a failure to take precautions to enable the actor adequately to cope with a possible future emergency." *Bialek v. Moraine Valley Community College Sch. Dist. 524*, 642 N.E.2d 825, 865 (Ill. App. Ct. 1994). Conduct of this type, instead, requires a "conscious choice of a course of action, either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man." *Burke v. 12 Rothschild's Liquor Mart*, 593 N.E.2d 522, 531 (Ill. 1992) (quoting Restatement (Second) of Torts § 500, Comment g at 590 (1965)).

When alleging that a defendant engaged in willful and wanton conduct, the plaintiff cannot merely label the conduct as willful and wanton in order to meet the pleading standard. *Winfrey v. Chicago Park Dist.*, 654 N.E.2d 508, 512 (Ill. App. Ct. 1995). Rather, the willful and wanton conduct must be shown through well-pled facts. *Id.* Conclusory statements of fact or law will not suffice. *Adkins v. Sarah Bush Lincoln Health Center*, 544 N.E.2d 733, 744 (Ill. 1989).

Courts have not determined a hard and fast rule for what constitutes willful and wanton conduct, so assessing the nature of the conduct requires a thorough examination of the facts alleged by the plaintiff. *Winfrey*, 654 N.E.2d at 945. For example, a plaintiff may allege that "the defendant removed safety equipment, or had previous knowledge of accidents, or had been put on notice of the danger." *Winfrey*, 654 N.E.2d at 945; *see also Benhart v. Rockford Park Dist.*, 578 N.E.2d 600, 604 (Ill.

App. Ct. 1991) (finding plaintiff sufficiently alleged willful and wanton conduct by stating that the defendant removed non-slip strips on the bottom of its pool).

In this case, Plaintiffs allege that the Board, "willfully and wantonly allowed its employee and/or agent to fail to enforce significant accommodations for the developmental delay disability of J.E., as contained in J.E.'s Individual Education Program (IEP), when the teacher of J.E. at Stagg Elementary School failed to provide general supervision of J.E. while J.E. was on the playground and fell." [17] ¶ 79. Plaintiffs also allege that the playground was inherently dangerous, and that the Board knew children regularly fall and are injured on playgrounds. *Id.* Additionally, Plaintiffs contend that the Board failed to provide J.E. with a safe learning space and failed to train or instruct its agents and/or employees as to the proper means and conduct of providing J.E. with the services required by her IEP. *Id.*

None of the above allegations rise to the level of willful and wanton conduct. Plaintiffs do not support their claim with any facts to suggest the Board may have removed safety equipment from the Stagg playground. Nor do they offer any facts to suggest the Board had previous knowledge of accidents on the Stagg playground or had been put on notice of any danger. Although J.E.'s IEP stated that she could play on a playground "given general supervision," it does not state that J.E. had a particular propensity for physical injury or required special supervision to use playground equipment. As such, Plaintiffs do not allege that the Board or any of its agents or employees willfully and wantonly disregarded J.E.'s needs as mentioned in her IEP.

Plaintiffs also allege that the playground "was inherently dangerous with large concrete steps, climbing devices, and uneven surfaces which pose a safety danger to young children, especially disabled children." [17] ¶ 42. But such features typically exist on playgrounds, and Plaintiffs do not allege that the Board had knowledge of any hazardous defects present on the Stagg playground. The bare allegation that the Board was "well aware that students are regularly injured on playgrounds," remains insufficient, without more, to state a claim for willful and wanton conduct.

Ultimately, Plaintiffs' complaint points to no "conscious choice of a course of action" that teachers at Stagg took when they allegedly failed to specifically supervise J.E. on the playground. *Burke*, 593 N.E.2d at 531. Rather than showing an utter indifference or conscious disregard for J.E.'s welfare, the fact that six teachers were outside at the time of the accident suggests that their failure to supervise J.E. amounted, at worst, to mere negligence, or "inadvertence, incompetence, unskillfulness, or a failure to take precautions to enable the actor adequately to cope with a possible future emergency." *Bialek*, 642 N.E.2d at 865.

Accordingly, the Court grants the Board's motion to dismiss Count II of Plaintiffs' complaint for failure to plead facts sufficient to support a finding of willful and wanton conduct.

## IV. Conclusion

For the foregoing reasons, the Court grants the Board's motion to dismiss, [18], and dismisses the Amended Complaint. Plaintiffs have already amended once and failed to cure the deficiencies in the original complaint. J.E.'s IEP, which Plaintiffs

attached to the Amended Complaint, does not require an accommodation or modification to support her during physical activity, including playing on a playground, and Plaintiffs offer no other basis for their ADA claim. Plaintiffs have also alleged no facts to support a claim of intentional discrimination or willful and wanton conduct. Of course, Plaintiffs remain free, if appropriate, to purse remedies in state court under any available legal theories, but the Amended Complaint alleged here is dismissed. If Plaintiffs believe, in good faith and consistent with Rule 11 (which includes sanctions for pleadings not filed in good faith), that they can set forth factual allegations to cure the deficiencies discussed above, then they may file a second amended complaint on or before April 12, 2024. If Plaintiffs fail to file an amended complaint by this date, the Court will dismiss this case.

Dated: March 28, 2024

Entered:

John Robert Blakey
United States District Judge